## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CAROL S. BENJAMIN,**

> **Plaintiff,**

**vs.**                                                                  **No. CIV 02-0610 JB/WDS**

**JO ANNE B. BARNHART, Commissioner**
**of the Social Security Administration,**

> **Defendant.**

### MAGISTRATE JUDGE'S PROPOSED
### FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed on December 9, 2002.  Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that she was not eligible for supplemental security income or disability insurance benefits.  For the reasons stated below, the United States Magistrate Judge, having considered Plaintiff's Motion **[docket #11],** Memorandum in Support of Plaintiff's Motion **[docket #12],** Defendant's Response **[docket #13],** Plaintiff's Reply **[docket #14],** the administrative record, and applicable law, recommends that the Motion be **DENIED.**

### PROPOSED FINDINGS

1.      Plaintiff, who was born on February 9, 1953, filed her application for supplemental security income ("SSI") under Title XVI of the Social Security Act on February 16, 1999.  **Tr. 384-86.**  That application has a protective filing date of January 22, 1999.  **Tr. 16.**  Plaintiff also filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act on July 6, 2000.  **Tr. 74-76.**  Plaintiff alleged in both applications that she became disabled on September 10,

1997. **Tr. 74, 384.**

2.      Plaintiff's applications for benefits were denied at the initial level on May 6, 1999, **Tr. 63, 387,** and at the reconsideration level on August 25, 1999, **Tr. 64, 66-68, 388-91.** Plaintiff thereafter appealed by filing a request for hearing by an administrative law judge ("ALJ") on September 20, 1999. **Tr. 69.**

3.      The ALJ held a hearing on March 14, 2001, at which Plaintiff appeared and was represented by a non-attorney. **Tr. 32-62.** Plaintiff alleged that she is disabled as a result of multiple impairments, including wrist, arm and hand pain.  In a decision dated October 19, 2001, the ALJ denied Plaintiff's request for DIB and SSI. **Tr. 16-24.**

4.      Plaintiff filed a request for review with the Appeals Council on December 21, 2001. **Tr. 12.** The Appeals Council denied Plaintiff's request for review on March 26, 2002, **Tr. 9-11,** and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 404.981 (2003); 20 C.F.R. § 416.1481 (2003).

5.      On May 24, 2002, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for a recommended disposition on June 5, 2002.[1]

### **Standard of Review**

6.      This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v.*

---

[1]This case was initially assigned to Judge Deaton, but was subsequently referred to the undersigned United States Magistrate Judge on March 13, 2003.

*Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10ᵗʰ Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

7.     The issue in this case is whether Plaintiff is "disabled" and therefore qualified for benefits under Titles II and XVI of the Social Security Act. A sequential five-step analysis applies in determining whether an adult claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10ᵗʰ Cir. 1988); 20 C.F.R. § 404.1520 (2003); 20 C.F.R. § 416.920 (2003). First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling and the claimant is entitled to benefits.

*Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five. *Id.* At step five, the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). At this step, the claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

## Application of the Sequential Five Step Analysis

8. The ALJ found at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity since the date she alleges she became disabled, September 10, 1997. **Tr. 17.** At step two, the ALJ concluded that Plaintiff has medically determinable impairments that have been severe during the relevant time period, including chronic overuse syndrome, which affects Plaintiff's wrists, and cervical/brachial injuries, which affects her ability to use both upper extremities. **Tr. 20, 23.** The ALJ found at step three that Plaintiff's impairments did not meet any Listed Impairment. **Tr. 20.** At step four, the ALJ found that Plaintiff has retained the RFC for a limited range of sedentary work activity. **Tr. 21.** Because the ALJ found that Plaintiff's residual functional capacity precludes repetitive motion tasks with her hands or her arms, the ALJ found that Plaintiff was unable to perform her past relevant work as a medical transcriber. **Tr. 21.** The parties do not contest the ALJ's findings at steps one through four of the sequential analysis.

9. At step five of the sequential analysis, the ALJ found that there are a significant

number of jobs in the national economy that Plaintiff can perform given her RFC and other vocational factors, despite the limitations imposed by her impairments.  **Tr. 22.**  Plaintiff contends that the ALJ erred at step five of the sequential analysis.

### Issue One:  Whether the ALJ Gave Proper Consideration to Assessments by Plaintiff's Treating Physician

10.    Plaintiff's first contention is that the ALJ erred when he failed to accord proper weight to assessments by her treating physician.  More specifically, Plaintiff asserts that her treating physician, Dr. Anthony Reeve, documented a history of severe, disabling impairments, which "must be accorded all the weight of law."  For the following reasons, I find that the ALJ did not err in his consideration of Dr. Reeve's opinions.

11.    An ALJ must give controlling weight to a treating physician's opinion regarding a claimant's symptoms, diagnosis and prognosis, and physical or mental restrictions, if the opinion is "well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record."  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994).

12.    Plaintiff points out that, from 1997 through 1999, Dr. Reeve diagnosed Plaintiff as suffering from a variety of conditions including right de Quervain's disease and right wrist flexor tendinitis, **Tr. 232-34;** a ligamentous tear in the left wrist, **Tr. 312;** and repetitive motion syndrome and ongoing active tendinitis, **Tr. 305-06.**  Plaintiff appears to argue that the ALJ should have found that she was disabled given these diagnoses and other indications that Plaintiff suffers "pain and tenderness throughout the wrist and hands."  However, the fact that Plaintiff has been diagnosed with a variety of medical conditions that cause pain is not dispositive.  The operative question for a finding

5

of disability is whether Plaintiff has functional limitations as a result of her impairments that prevent her from doing any work that exists in significant numbers in the national economy. *See Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988); 20 C.F.R. § 404.1520 (2003); 20 C.F.R. § 416.920 (2003). The ALJ specifically relied upon Dr. Reeve's opinions when he identified the functional limitations that result from Plaintiff's impairments. Plaintiff's contention that the ALJ failed to accord proper weight to Dr. Reeve's opinions is, therefore, rather anomalous.

13.    The ALJ concluded that Plaintiff retains the RFC to perform a limited range of sedentary work activity, which is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (2003); 416.967(a) (2003).

14.    In concluding that Plaintiff retains the ability to perform a limited range of sedentary work activity, the ALJ first found that Plaintiff is able to lift objects weighing less than ten pounds, and is able to stand eight hours and sit six hours total in an eight hour work day. **Tr. 21.** These findings were based upon a statement that was prepared by Dr. Reeve on August 6, 1998. **Tr. 124.**

15.    The ALJ also accepted the functional limitations that Dr. Reeve placed upon Plaintiff's ability to engage in certain work activities. In this regard, the ALJ adopted Dr. Reeve's opinion that Plaintiff "is not able to perform tasks requiring repetitive reaching, handling or fingering or tasks requiring grasping, turning, twisting." **Tr. 21, 335.** The ALJ also adopted Dr. Reeve's opinion that Plaintiff "is able to use her hands for fine manipulation for up to 10 percent of the work day and she is able to perform tasks requiring reaching for up to 20 percent of the work day." **Tr. 21, 335.**

6

16.     Despite the fact that the ALJ relied upon Dr. Reeve's opinions in assessing Plaintiff's RFC, Plaintiff contends that the ALJ erred when he failed to accord controlling weight to Dr. Reeve's statements that allegedly indicate that Plaintiff's impairments are disabling.  *See* Mem. in Supp. of Pl's Mot. at 3.  As support for this argument, Plaintiff cites a letter dated February 10, 1999, in which Dr. Reeve wrote:

> In regards to Carol Benjamin Sue [sic], the patient is well known to my service and has been followed for extended time.  She has been diagnosed with overuse syndrome which has significantly disabled her from performing her previous occupation.  The majority of patients occupation [sic] involve repetitive activity at the hospital.  Based on the patients functional capacity evaluation in my opinion this patient have [sic] significant difficulty obtaining any employment for eight hours today.  I based this opinion on the fact she has weakness of a chronic basis.

**Tr. 135.**  Contrary to Plaintiff's argument, for the following reasons I do not think Dr. Reeve expressed the opinion that Plaintiff is totally disabled.

17.     First, the opinions expressed in Dr. Reeve's February 10, 1999 letter are generally consistent with the ALJ's findings.  Dr. Reeve stated that Plaintiff was "significantly disabled from performing her previous occupation."   This statement is entirely consistent with the ALJ's determination that Plaintiff is "unable to perform her past relevant work as a medical transcriber because of the extensive use of both hands required in that job."  **Tr. 21.**

18.     Second, read apart from other evidence in the record, Dr. Reeve's statement that Plaintiff would "have significant difficulty obtaining any employment for eight hours today" might arguably suggest that Plaintiff is disabled as a result of her impairments.  However, rather than reading this statement alone, the ALJ interpreted this statement along with Dr. Reeve's other relevant opinions.  For example, the ALJ noted that Dr. Reeve had also opined that Plaintiff would be a candidate for vocational rehabilitation for jobs that did not involve repetitive acts.  **Tr. 21, 125.**

7

Although not cited by the ALJ, Dr. Reeve also wrote, in a letter dated May 27, 1999, that Plaintiff "was previously performing an occupation that was repetitive in nature," and that she "is currently incapable of performing her *previous occupation* on a part-time or regular duty basis." **Tr. 364** (emphasis added).  These other statements indicate that, rather than being totally disabled, Plaintiff is unable to perform repetitive motion activities such as those associated with her past relevant employment.  In light of these other opinions, the ALJ could properly have interpreted Dr. Reeve's statement that Plaintiff would "have significant difficulty obtaining any employment for eight hours today" as referring only to those jobs that involved repetitive motion tasks with her hands or arms.

19.     I therefore find that the ALJ's decision is consistent with Dr. Reeve's opinions, and, consequently, the ALJ did not fail to accord controlling weight to Dr. Reeve's opinions.

20.     Plaintiff makes one other argument relating to the weight the ALJ accorded to her treating physician's opinion.  The ALJ wrote that, "[i]n February 1998, Dr. Reeve wrote that Claimant should be able to continue 'light duty,' but that, due to the condition of her wrists and upper extremities, she should avoid repetitive or strenuous work with either hand, at least temporarily." **Tr. 21.**  Plaintiff points out that the ALJ erred insofar as Dr. Donald Vichick, a physician to whom Plaintiff had been referred for a second opinion, and not Dr. Reeve, was the party who wrote that Plaintiff should be able to continue light duty.

21.     Regardless of which doctor opined that Plaintiff could continue "light duty" but should avoid repetitive or strenuous work with her hands, the ALJ concluded that Plaintiff retained the RFC to perform only a limited range of sedentary work activity.  Thus, the ALJ construed the evidence more favorably to Plaintiff than Dr. Vichick's opinion would indicate.  I therefore find that the ALJ's error in attributing the statements to Dr. Reeve rather than Dr. Vichick was harmless.

## Issue Two:  Whether the ALJ Posed Proper Hypotheticals to the VE

22.     Plaintiff also contends that the ALJ erred when he failed to include chronic pain through the wrists and hands and generalized weakness of the limbs in the hypotheticals he posed to the vocational expert ("VE").

23.     Hypothetical questions posed to a VE "must reflect with precision all of [a claimant's] impairments, but they need only reflect impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996).

24.     The ALJ's hypothetical to the VE included the following functional limitations:

> Claimant can lift less than 10 pounds occasionally and less than 10 pounds frequently. Claimant can stand 8 hours per day and can sit 6 hours in an 8-hour workday, with normal breaks.  Claimant has significant limitations on doing repetitive reaching, handling and fingering.  She can not do work which requires grasping, turning or twisting objects.  She can only use her hands 10% of the workday for fine manipulations.  She can only use her arms for reaching 20% of the workday.

**Tr. 106.**  For the following reasons I find that the ALJ's hypothetical was proper.

25.     Despite the fact that the ALJ did not explicitly state in his hypothetical that Plaintiff has chronic pain in her wrists and hands and generalized weakness in her upper extremities, the ALJ's hypothetical included all of the functional limitations Dr. Reeve had placed upon Plaintiff's ability to use her upper extremities.  Dr. Reeve, in turn, had assessed the effect of Plaintiff's pain and weakness on her functional capacity and included that assessment in the impairment ratings he assigned to Plaintiff.  The process by which Dr. Reeve assessed Plaintiff's functional limitations is as follows.

26.     Dr. Reeve wrote on June 15, 1998 that he gave Plaintiff a ten-percent impairment rating to each of her upper extremities.  **Tr. 303.**  Dr. Reeve based his impairment rating on two factors:  "[t]he first issue was that the patient did not return to work, and she has upper extremity

pain which has given her a degree of weakness." **Tr. 303.**   Dr. Reeve also explained that, because

he had given Plaintiff a ten-percent upper extremity rating to both hands, this would result in a

twenty-percent impairment rating. **Tr. 306.**

27.     By way of contrast with Dr. Reeve's findings, two other physicians to whom Plaintiff

had been referred found that Plaintiff had no impairment rating. *See* **Tr. 303.**  In February 1998,

Plaintiff was referred to Dr. Donald Vichick for a second opinion regarding her wrist pain. **Tr. 294.**

After referring Plaintiff for certain tests and occupational therapy, Dr. Vichick wrote that Plaintiff was

at maximum medical improvement as of March 23, 1998 regarding the tendinitis in her wrist. **Tr.

289.**  Dr. Vichick also wrote that "[s]ince there were no objective physical findings or loss of

function, her impairment rating is 0%." **Tr. 289.**  On March 23, 1998, Plaintiff also underwent an

electrodiagnostic examination performed by Dr. Brian Delahoussaye.   **Tr. 267-276.**   Dr.

Delahoussaye found that Plaintiff had full motor power in her elbows, wrists and hands, **Tr. 269,** and

concluded that she should be allowed to return to work on a full-time basis without any restrictions

"as a result of her previous industrial injuries." **Tr. 271.**

28.     Dr. Reeve noted that he disagreed with Dr. Vichick's and Dr. Delahoussaye's findings.

**Tr. 303.**  However, on July 23, 1998, Dr. Reeve wrote that he had been notified that Plaintiff's "grip

strength did not demonstrate the amount of [her] impairment," and that he had therefore requested

that Cynthia Serrano perform a re-evaluation to demonstrate that Plaintiff had "hand grip index loss."

**Tr. 301.**  Dr. Reeve also wrote that if testing did not demonstrate that Plaintiff had hand grip index

loss, his impairment rating might "need to be rescinded." **Tr. 301.**

29.     The re-evaluation requested by Dr. Reeve was conducted by Cynthia Serrano on July

29, 1998. **Tr. 180-85.**  Plaintiff's grip strength at the start of the evaluation measured 48.2 percent

of the mean for her right hand, and 58.9 percent of the mean for her left hand. **Tr. 181.** At the end

of the evaluation, Plaintiff's grip strength measured 51.4 percent of the mean for her right hand, and

50 percent of the mean for her left hand. **Tr. 182.** Additionally, results of Plaintiff's manual muscle

testing were all in the normal to good range. **Tr. 183-85.**

30. While I have found no document in the record in which Dr. Reeve addresses or

interprets the results of Ms. Serrano's testing, the record indicates that Dr. Reeve adhered to the

impairment rating he had assigned to Plaintiff. On May 27, 1999, Dr. Reeve reiterated that he had

given Plaintiff a "20% upper extremity impairment rating due to her chronic loss of function," and

wrote that Plaintiff "is currently incapable of performing her previous occupation on a part-time or

regular duty basis." **Tr. 364.** On April 7, 2000, Dr. Reeve also opined that Plaintiff could use her

fingers for fine manipulations for ten-percent of an eight-hour work day, and could use her arms for

reaching for twenty-percent of an eight-hour work day. **Tr. 335.**

31. Thus, even though two other physicians found that Plaintiff had no upper extremity

impairment rating, the ALJ accepted Dr. Reeve's more favorable assessment of Plaintiff's upper

extremity functioning. Specifically, the ALJ adopted Dr. Reeve's findings when he stated in his

hypothetical to the VE that Plaintiff "has significant limitations on doing repetitive reaching, handling

and fingering. She can not do work which requires grasping, turning or twisting objects."[2] **Tr. 106,**

**335.** The ALJ also adopted Dr. Reeve's opinion that Plaintiff "is able to use her hands for fine

---

[2]Plaintiff also asserts, for the first time in her Reply, that the ALJ erred when he failed to take
into account "all the limitations to which the claimant testified at the hearing like the dropping of
objects." Contrary to Plaintiff's argument, a limitation involving "dropping of objects" seems clearly
accounted for by the ALJ's findings that Plaintiff has significant limitations on handling and fingering,
and that Plaintiff cannot do work that requires grasping objects.

manipulation for up to 10 percent of the work day and she is able to perform tasks requiring reaching for up to 20 percent of the work day." **Tr. 106, 335.** As I have previously noted, Dr. Reeve's determination of Plaintiff's functional limitations was based on his finding that "she has upper extremity pain which has given her a degree of weakness." **Tr. 303.** I therefore find that the ALJ's hypothetical adequately reflected the ALJ's, and Dr. Reeve's, conclusions regarding the effect of Plaintiff's pain and weakness on her ability to work.

32.     For the foregoing reasons, I find that the ALJ did not err by failing to specifically state, in his hypothetical to the VE, that Plaintiff had chronic pain through the wrists and hands and generalized weakness of her upper extremities. Instead, I find that the effect of Plaintiff's pain and weakness on her ability to work were incorporated into the more specific functional limitations the ALJ included in his hypothetical to the VE.

### Issue Three: Whether the ALJ Properly
### Found that Plaintiff's Testimony Lacked Credibility

33.     The ALJ determined that Plaintiff's testimony relating to her symptoms and their effect on her functioning was not wholly credible. **Tr. 20.** Consequently, the ALJ stated that he discounted Plaintiff's testimony and medical experts' opinions that were "based, in whole, or in part, upon the symptoms and history testified to by the claimant." **Tr. 20.** Plaintiff contends, for the first time in her Reply brief, that the ALJ "failed to offer clear and convincing reasons for rejecting the Plaintiff's testimony regarding pain. As a result, claimant's testimony must be credited as true." Pl.'s Reply Br. at 3. Plaintiff also contends that, because the ALJ allegedly failed to perform a proper credibility analysis, the ALJ erred when he discounted Plaintiff's testimony and medical experts' opinions. Pl.'s Reply Br. at 4. Plaintiff does not, however, specify what testimony or expert opinions the ALJ should have considered. In fact, Plaintiff has previously argued that the ALJ should have given controlling

weight to the opinions of her treating physician, Dr. Anthony Reeve, and as I have found in the discussion above, the ALJ *did* rely upon Dr. Reeve's opinions when he identified the functional limitations that result from Plaintiff's impairments.  Plaintiff's failure to specify what other testimony or expert opinions the ALJ should have considered therefore renders it difficult to determine how, if at all, Plaintiff may have been prejudiced as a result of the ALJ's alleged failure to perform a proper credibility analysis.

34.     Regardless of the foregoing, courts generally do not consider arguments raised for the first time in a reply brief.  *E.g., Stump v. Gates,* 211 F.3d 527, 533 (10th Cir. 2000); *Sadeghi v. Immigration & Naturalization Serv.,* 40 F.3d 1139, 1143 (10th Cir. 1994) (court generally does not consider issues raised for first time in a reply brief, except where those issues relate to jurisdictional requirements).  Since Plaintiff has set forth no reason why she failed to raise the issue of her credibility until she filed her Reply, and Defendant has not had the opportunity to respond, I decline to address these arguments.

<u>**Conclusion and Summary**</u>

35.     In sum, I find that the ALJ gave proper consideration to assessments by Plaintiff's treating physician, Dr. Anthony Reeve.  Under the treating physician rule, an ALJ must generally give controlling weight to a treating physician's opinion that is well-supported and not inconsistent with other substantial evidence in the record.  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994).  Contrary to Plaintiff's arguments, the ALJ in this case utilized Dr. Reeve's opinions in determining the functional limitations Plaintiff suffers as a result of her impairments, and therefore properly accorded Dr. Reeve's opinions controlling weight.

36.     I also find that the ALJ's hypothetical to the VE was proper.  Although the ALJ did

not explicitly state that Plaintiff suffers chronic wrist and hand pain and generalized weakness, those conditions were incorporated into the more specific functional limitations the ALJ included in his hypothetical to the VE.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, I recommend that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[docket # 11]** be **DENIED.**

Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**